1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                       CENTRAL DISTRICT OF CALIFORNIA

10

11   CARRIE N.,                          )   Case No.  ED CV 19-2129-SP
                                         )
12                 Plaintiff,            )
                                         )
13          v.                           )   MEMORANDUM OPINION AND
                                         )   ORDER
14                                       )
     ANDREW M. SAUL, Commissioner of     )
15   Social Security Administration,     )
                                         )
16                 Defendant.            )
                                         )
17   _____ )

18

19                                    **I.**

20                           **INTRODUCTION**

21          On November 6, 2019, plaintiff Carrie N. filed a complaint against

22   defendant, the Commissioner of the Social Security Administration

23   ("Commissioner"), seeking review of a denial of a period of disability and

24   disability insurance benefits ("DIB").  The parties have fully briefed the issues in

25   dispute, and the court deems the matter suitable for adjudication without oral

26   argument.

27          Plaintiff presents two disputed issues for decision: (1) whether the

28   Administrative Law Judge ("ALJ") failed to properly consider the evidence in the

1  record in assessing plaintiff's residual functional capacity ("RFC"); and (2)

2  whether the ALJ improperly discounted plaintiff's testimony.  Plaintiff's

3  Memorandum in Support of Complaint ("P. Mem.") at 3-15; *see* Defendant's

4  Memorandum in Support of Answer ("D. Mem.") at 1-9.

5         Having carefully studied the parties' memoranda, the Administrative Record

6  ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein,

7  the ALJ did not properly evaluate plaintiff's testimony, and also erred in

8  determining plaintiff's RFC.  The court therefore reverses the decision of the

9  Commissioner denying benefits and remands the matter for further administrative

10  action consistent with this decision.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

13         Plaintiff, who was 54 years old on the alleged disability onset date, is a high

14  school graduate with some college.  AR at 32, 48.  Plaintiff has past relevant work

15  in a composite job consisting of customer complaint clerk, customer service

16  supervisor, appointment clerk, and data entry clerk.  AR at 42.

17         On July 22, 2016, plaintiff filed an application for a period of disability and

18  DIB, claiming she suffered from postural tachycardia syndrome, headaches,

19  fainting episodes, and nausea.  AR at 48-49.  Plaintiff's application was denied

20  initially and on reconsideration.  AR at 58, 69.

21         Plaintiff requested a hearing, which the assigned ALJ held on August 15,

22  2018.  AR at 30.  Plaintiff, represented by counsel, appeared and testified at the

23  hearing.  AR at 32-42.  The ALJ also heard testimony from Mary Jesko, a

24  vocational expert.  AR at 40-46.  The ALJ denied plaintiff's claim for benefits on

25  October 24, 2018.  AR at 15-23.

26         Applying the well-established five-step sequential evaluation process, the

27  ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity

28

1    since February 1, 2016, the alleged onset date.  AR at 17.

2         At step two, the ALJ found plaintiff suffered from the following severe

3    impairments: migraines; left leg impairment; postural orthostatic tachycardia

4    syndrome ("POTS"); asthma and chronic asthmatic bronchitis; episodes of syncope

5    and near-syncope; and generalized anxiety disorder ("GAD").  *Id.*

6         At step three, the ALJ found plaintiff's impairments, whether individually or

7    in combination, did not meet or medically equal one of the listed impairments set

8    forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.*

9         The ALJ then assessed plaintiff's RFC,[1] and determined plaintiff had the

10   RFC to perform a full range of work at all exertional levels, but with the

11   nonexertional limitations that she: requires the freedom to sit at will when either

12   standing or walking, without being off-task; can occasionally climb stairs and

13   ramps; can never climb ladders or scaffolds; and can occasionally balance, stoop,

14   kneel, crouch, and crawl.  AR at 19.  The ALJ further precluded plaintiff from:

15   exposure to heavy vibrations, unprotected heights, and workplace hazards;

16   operating a motor vehicle commercially; exposure to extreme temperatures;

17   exposure to more than moderate noise levels; concentrated exposure to dust, odors,

18   fumes, and pulmonary irritants; exposure to open bodies of water such as

19   swimming pools and lakes; and more than occasional exposure to direct sunlight.

20   *Id.*  The ALJ determined plaintiff would be best suited for an occupation without

21   high production quotas, and not in a fast-paced work environment.  *Id.*

22         The ALJ found, at step four, that plaintiff was able to perform past relevant

23

24   _____

25   [1]   Residual functional capacity is what a claimant can do despite existing
     exertional and nonexertional limitations.  *Cooper v. Sullivan*, 880 F.2d 1152, 1155-

26   56 n.5-7 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation,
     the ALJ must proceed to an intermediate step in which the ALJ assesses the

27   claimant's residual functional capacity."  *Massachi v. Astrue*, 486 F.3d 1149, 1151

28   n.2 (9th Cir. 2007).

1  work in a composite position consisting of the sedentary occupations of customer

2  complaint clerk, supervisor, appointment clerk, and data entry clerk.  AR at 23.

3  Accordingly, the ALJ concluded plaintiff was not under a disability, as defined in

4  the Social Security Act, at any time from February 1, 2016 through the date of

5  decision.  *Id.*

6      Plaintiff filed a timely request for review, which the Appeals Council

7  denied.  AR at 1-3.  Accordingly, the ALJ's decision stands as the final decision of

8  the Commissioner.

9                                    **III.**

10                          **STANDARD OF REVIEW**

11      This court is empowered to review decisions by the Commissioner to deny

12  benefits.  42 U.S.C. § 405(g).  The findings and decision of the Social Security

13  Administration must be upheld if they are free of legal error and supported by

14  substantial evidence.  *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001)

15  (as amended).  But if the court determines the ALJ's findings are based on legal

16  error or are not supported by substantial evidence in the record, the court may

17  reject the findings and set aside the decision to deny benefits.  *Aukland v.*

18  *Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d

19  1144, 1147 (9th Cir. 2001).

20      "Substantial evidence is more than a mere scintilla, but less than a

21  preponderance."  *Aukland*, 257 F.3d at 1035 (citation omitted).  Substantial

22  evidence is such "relevant evidence which a reasonable person might accept as

23  adequate to support a conclusion."  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir.

24  1998) (citations omitted); *Mayes*, 276 F.3d at 459.  To determine whether

25  substantial evidence supports the ALJ's finding, the reviewing court must review

26  the administrative record as a whole, "weighing both the evidence that supports

27  and the evidence that detracts from the ALJ's conclusion."  *Mayes*, 276 F.3d at

28

1    459.  The ALJ's decision "cannot be affirmed simply by isolating a specific

2    quantum of supporting evidence." *Aukland*, 257 F.3d at 1035 (internal quotation

3    marks omitted).  If the evidence can reasonably support either affirming or

4    reversing the ALJ's decision, the reviewing court "may not substitute its judgment

5    for that of the ALJ." *Id.* (internal quotation marks omitted).

6                                          **IV.**

7                                    **DISCUSSION**

8    **A.     The ALJ Failed to Properly Evaluate Plaintiff's Testimony**

9            Plaintiff argues the ALJ essentially ignored her subjective testimony or, at

10   best, failed to consider it in any meaningful way.  P. Mem. at 11.  Plaintiff

11   contends the ALJ's reasons for discounting her testimony – that it was inconsistent

12   with the evidence and lacked supporting objective medical evidence – were not

13   proper reasons under the law.  *See id.* at 11-12.

14           In response, defendant claims the ALJ had several reasons for discounting

15   plaintiff's testimony, including a lack of objective evidence establishing the

16   frequency and severity of her symptoms, no supporting evidence regarding

17   physical limitations, the conservative nature of her treatment, and the effectiveness

18   of her medications.  D. Mem. at 8.  Defendant argues these reasons were sufficient

19   to conclude plaintiff's subjective allegations about the limiting effects of her

20   impairments did not warrant additional limitations to the RFC.  *Id.*

21           The court looks to Social Security Ruling ("SSR") 16-3p for guidance on

22   evaluating plaintiff's alleged symptoms.  SSR 16-3p rescinded and superseded

23   SSR 96-7p and applies to decisions made on or after March 28, 2016.  SSR 16-3p,

24   2017 WL 5180304, at *1 (Oct. 25, 2017).  "Although SSRs do not have the same

25   force and effect as statutes or regulations, they are binding on all components of

26   the Social Security Administration."  *Id.* (citing 20 C.F.R. § 402.35(b)(1)).

27           In adopting SSR 16-3p, the Social Security Administration sought to "clarify

28

                                            5

1   that subjective symptom evaluation is not an examination of an individual's

2   character." *Id.* at *2.

3         [SSR 16-3p] makes clear what our precedent already required: that

4         assessments of an individual's testimony by an ALJ are designed to

5         evaluate the intensity and persistence of symptoms after the ALJ finds

6         that the individual has a medically determinable impairment(s) that

7         could reasonably be expected to produce those symptoms, and not to

8         delve into wide-ranging scrutiny of the claimant's character and

9         apparent truthfulness.

10   *Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (internal quotation

11   marks and alterations omitted).

12         To evaluate a claimant's symptom testimony, the ALJ engages in a two-step

13   analysis. *Christine G. v. Saul*, 402 F. Supp. 3d 913, 921 (C.D. Cal. 2019) (quoting

14   *Trevizo*, 871 F.3d at 678).  First, the ALJ must determine whether the claimant

15   produced objective medical evidence of an underlying impairment that could

16   reasonably be expected to produce the symptoms alleged. *Id.*  Second, if the

17   claimant satisfies the first step, and there is no evidence of malingering, the ALJ

18   must evaluate the intensity and persistence of the claimant's symptoms and

19   determine the extent to which they limit her ability to perform work-related

20   activities. *Id.*  In assessing intensity and persistence, the ALJ may consider: a

21   claimant's daily activities; the location, duration, frequency, and intensity of the

22   symptoms; precipitating and aggravating factors; the type, dosage, effectiveness,

23   and side effects of medication taken to alleviate the symptoms; other treatment

24   received; other measures used to relieve the symptoms; and other factors

25   concerning the claimant's functional limitations and restrictions due to the

26   symptoms. *Id.* (citing 20 C.F.R. § 416.929; SSR 16-3p, 2017 WL 5180304, at *4;

27   *Smolen v. Chater*, 80 F.3d 1273, 1283-84 & n.8 (9th Cir. 1996)).  If the ALJ rejects

28

1    the claimant's subjective symptom statements at step two, the ALJ must provide

2    "specific, clear, and convincing" reasons, supported by substantial evidence in the

3    record, for doing so. *Id.* at 921, 929.

4         At the first step, the ALJ found plaintiff's medically determinable

5    impairments could reasonably be expected to cause the symptoms alleged. AR at

6    21. At the second step, the ALJ discounted plaintiff's testimony concerning the

7    intensity, persistence, and limiting effects of her symptoms as not entirely

8    consistent with the evidence in the record. AR at 22. Because plaintiff cleared

9    step one and the ALJ found no evidence of malingering, the ALJ's reasons for

10   discounting plaintiff's testimony had to be specific, clear, convincing, and

11   supported by substantial evidence.

12         The ALJ first purported to have found inconsistencies between plaintiff's

13   testimony and the record, but even construing the ALJ's decision generously, she

14   at most listed only one such consistency. Namely, the ALJ noted plaintiff worked

15   for many years after the onset of her migraine headaches.[2] *See* AR at 22. But this

16   reason is far from specific, clear, and convincing. The ALJ did not specify what

17   parts of plaintiff's testimony are inconsistent, and the court does not find any. *See*

18   AR at 34-35 (plaintiff's testimony about her migraines). Nothing in plaintiff's

19   testimony is inconsistent with the fact that plaintiff continued working for years

20   after the onset of her severe headaches in 1981 (AR at 182). In fact, plaintiff did

21

22

    [2]  In fact, it is unclear whether the ALJ actually relied on this reason given her
23   conclusion that plaintiff's statements "are inconsistent because there is no objective
    evidence" of her alleged limitations. *See* AR at 22. Those are two separate
24   concepts. Just because testimony lacks objective, supporting evidence does not
25   necessarily mean it is inconsistent with the record. Indeed, it is for this reason that
26   a lack of objective medical evidence by itself is not a sufficient basis to discount a
    claimant's testimony. *Trevizo*, 871 F.3d at 679; *Bruce v. Astrue*, 557 F.3d 1113,
27   1116 (9th Cir. 2009) (lay testimony is particularly important where the objective
28   medical evidence does not support alleged symptoms).

1    not stop working because of her migraines but rather because she kept fainting

2    while at work.  *See* AR at 33-34.

3         Moreover, focusing on the onset of plaintiff's migraines improperly assumes

4    that their intensity, persistence, and limiting effects have remained the same since

5    1981.  In fact, plaintiff reported to her physician in March of 2016 that the severity

6    of her migraines has fluctuated over the years.  *See* AR at 1620; *Garrison v.*

7    *Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("Cycles of improvement and

8    debilitating symptoms are a common occurrence, and in such circumstances it is

9    error for an ALJ to pick out a few isolated instances of improvement over a period

10   of months or years and to treat them as a basis for concluding a claimant is capable

11   of working." (citation omitted)).  And at the hearing, plaintiff testified her

12   migraines are triggered more often now due to her anxiety, and her flare ups can

13   last up to a couple of days.  *See* AR at 34-35.  For these reasons, the ALJ's vague

14   reference to inconsistencies and later reference to plaintiff's long history of

15   working since the onset of her migraines was not a specific, clear, and convincing

16   reason to discount plaintiff's testimony.

17        Aside from that unconvincing reason, the bulk of the ALJ's analysis of

18   plaintiff's testimony is spent listing examples of how her statements lack objective,

19   supporting evidence.  *See* AR at 22.  But ALJs "may not disregard a claimant's

20   testimony solely because it is not substantiated affirmatively by objective medical

21   evidence." *Trevizo*, 871 F.3d at 679 (internal quotation marks omitted).  Thus,

22   absent additional, proper reasons, the ALJ's discounting of plaintiff's testimony

23   was erroneous.

24        In its memorandum, defendant lists several other reasons for discounting

25   plaintiff's testimony.  For instance, defendant argues there is evidence of

26   conservative treatment in the record with respect to plaintiff's anxiety and panic

27   attacks.  *See* D. Mem. at 6.  Defendant also raises a discrepancy between plaintiff's

28

1   testimony and the medical evidence concerning the duration of her dizziness

2   episodes. *See id.* But the ALJ did not actually rely on any of these reasons in her

3   evaluation of plaintiff's testimony. It is well-established that the court is

4   "constrained to review the reasons the ALJ asserts." *Burrell v. Colvin*, 775 F.3d

5   1133, 1141 (9th Cir. 2014) (internal quotation marks omitted).

6        Accordingly, the court concludes the ALJ failed to provide specific, clear,

7   and convincing reasons, supported by substantial evidence, for discounting

8   plaintiff's testimony.

9   **B.**     **The ALJ's RFC Determination Did Not Properly Account for All the**

10         **Evidence of Record**

11        Plaintiff argues the ALJ failed to properly consider both objective and

12   subjective evidence in assessing plaintiff's RFC. P. Mem. at 3. Plaintiff

13   complains the ALJ compressed 1,400 pages of medical evidence into two pages of

14   her decision by cherry picking supportive medical records. *Id.* at 4. In doing so,

15   plaintiff argues the ALJ failed to properly consider medical evidence documenting

16   her recurrent severe migraine headaches, syncope episodes, weakness in the lower

17   extremities, buckling of the knees, and mental impairments such as her GAD. *See*

18   *id.* at 10. Plaintiff further contends the ALJ erred in concluding plaintiff has no

19   exertional limitations despite finding multiple severe physical impairments. *See id.*

20   at 3-4. Ultimately, Plaintiff claims each of her impairments prevents her from

21   working the combination of occupations the ALJ identified in step four. *See id.* at

22   10. Specifically, plaintiff argues it would be impossible for her to endure full-time

23   work, as evidenced by her failed attempt to return to work in 2016. *See id.*

24        Defendant counters that the fact the ALJ determined some of plaintiff's

25   impairments were severe does not mean they must result in RFC limitations. *See*

26   D. Mem. at 1. Defendant also argues at least some of plaintiff's impairments are

27   adequately controlled with medication, such as her asthma and migraines, and

28

1  points to the opinion of the state agency consultant as support for the ALJ's RFC

2  determination. *See id.* at 1-3.  Finally, defendant contends the ALJ considered all

3  of the evidence, even if she did not specifically discussed it in her decision. *See id.*

4  at 4-5.

5         The court already found the ALJ failed to properly consider plaintiff's

6  testimony.  This error alone warrants remand for the ALJ to reassess plaintiff's

7  RFC.  But the court also here considers whether the ALJ adequately accounted for

8  the medical evidence.

9          **1.**     **Effect of Step Two Finding**

10         As an initial matter, the court rejects plaintiff's argument that the ALJ's

11  finding of a severe impairment at step two must necessarily result in some sort of

12  limitation for purposes of determining the RFC.  Step two is a "de minimis

13  screening device used to dispose of groundless claims." *Webb*, 433 F.3d at 687

14  (internal quotation marks and alteration omitted).  "[A] finding that a[n

15  impairment] is severe at step two only raises a prima facie case of a disability."

16  *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007) (citation omitted).  The

17  proper question is whether substantial evidence supports the ALJ's RFC

18  determination.

19          **2.**     **The ALJ's RFC Determination**

20         RFC is what one can "still do despite [his or her] limitations."  20 C.F.R.

21  § 416.945(a)(1)-(2).  The ALJ reaches an RFC determination by reviewing and

22  considering all of the relevant evidence, including non-severe impairments. *Id.*

23  When the record is ambiguous, the Commissioner has a duty to develop the record.

24  *See Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005); *see also Mayes*, 276

25  F.3d at 459-60 (ALJ has a duty to develop the record further only "when there is

26  ambiguous evidence or when the record is inadequate to allow for proper

27  evaluation of the evidence").  This may include retaining a medical expert or

28

1 | ordering a consultative examination.  20 C.F.R. § 404.1519a(a).

2 |      In assessing plaintiff's RFC here, the ALJ analyzed the medical opinions of
3 | two state agency physicians and several pieces of objective and subjective medical
4 | evidence.

5 | **a.**     <u>**Medical Evidence**</u>

6 |      First, as to plaintiff's migraine headaches, the ALJ noted that in March 2016,
7 | plaintiff's head CT scan was normal.  AR at 20 (citing AR at 1620).  Moreover, in
8 | July 2017, plaintiff underwent a 24-hour EEG, which showed results in the "broad
9 | normal range."  *Id.* (citing AR at 1294).  As previously discussed, the ALJ appears
10 | to have concluded that plaintiff's migraines were not severely limiting due to the
11 | fact she worked for many years after the onset of severe headaches.  *See* AR at 22.

12 |      Second, concerning plaintiff's near-syncope and syncope episodes, the ALJ
13 | acknowledged plaintiff's POTS diagnosis and her positive test for orthostatic
14 | hypotension.  AR at 20 (citing AR at 1620).  Additionally, the ALJ noted that in
15 | March 2016, plaintiff had normal head and angio CT scans.  *Id.*  In January 2017,
16 | plaintiff reported fainting spells whenever she stood or sat for about an hour.  *Id.*
17 | (citing AR at 639).

18 |      The ALJ noted at least some of plaintiff's syncope and near-syncope events
19 | are associated with and possibly triggered by anxiety, and are sometimes treated
20 | with anti-anxiety medications.  AR at 18, 20 (citing AR at 785-87, 843).  For
21 | example, in February 2017, plaintiff had an episode of near-syncope in the
22 | presence of ER doctor Scott Walker.  AR at 20, 785.  Because plaintiff's heart rate
23 | and blood pressure remained stable, Dr. Walker determined the episode was not
24 | consistent with POTS or dangerous arrhythmia.  AR at 20, 785-87.  Dr. Walker
25 | treated plaintiff with Ativan, an anti-anxiety medication, and discharged her,
26 | noting her clinical scenario did not suggest a serious etiology.  *See id.*  The
27 | treatment notes for that visit show plaintiff appeared anxious, alert, oriented to
28 |

11

1   person, place, and time, and had a full range of motion.  AR at 20 (citing AR at

2   785-87).

3        A few days later, plaintiff once again presented to the ER with episodes of

4   "generalized shaking of her body followed by slumping over" with no hypotension

5   or tachycardia.  *Id.* (citing AR at 843).  In July 2017, plaintiff underwent a 24-hour

6   EEG, which showed results in the "broad normal range."  *Id.* (citing AR at 1294).

7        Third, with respect to plaintiff's mental impairments, the ALJ accepted

8   plaintiff has been diagnosed with GAD.  AR at 18 (citing AR at 1235).  The ALJ

9   reviewed psychotherapy notes showing approximately weekly treatment in March

10  and April of 2017.  *Id.*  During those therapy sessions, plaintiff reported panic

11  attacks and anxiety, but was otherwise cooperative and showed normal speech,

12  intact attention and concentration, affect, thought form and content, fund of

13  information, abstraction and generalization, recent and remote memory, insight and

14  judgment, alertness, and orientation to person, place, time, and situation.  *See id.*

15  (citing AR at 416-37).

16       At a November 2017 follow-up appointment, plaintiff appeared to be

17  anxious, depressed, and agitated.  *Id.* (citing AR at 1521).  Notwithstanding, she

18  again showed normal memory and judgment.  *Id.*

19       Fourth, as to plaintiff's problems with her extremities, including buckling of

20  her knees, the ALJ noted that in December 2016, plaintiff exhibited a normal gait,

21  range of motion in her back, and negative straight leg raise testing.  AR at 20

22  (citing AR at 550).  In January 2017, plaintiff reported she could climb at least one

23  flight of stairs and walk at least two blocks.  *Id.* (citing AR at 639).

24       In May 2018, plaintiff exhibited buckling and an astasia-abasia gait.  AR at

25  20, 1625.  The treating doctor noted plaintiff's pain was consistent with

26  lumbosacral radiculopathy starting in April 2018.  *See* AR at 20, 1625, 1680.

27  Plaintiff reported she began using a single-point cane in approximately January

28

2018.  AR at 20 (citing AR at 1625, 1680).  Her doctor also prescribed a 12-week course of physical therapy to decrease her symptoms and limitations, but there is no evidence she completed the therapy, or that if she did it objectively reduced her limitations.  *See id.* (citing AR at 1680).  The ALJ did not find any objective imaging or other studies showing radiculopathy or any impairment of the lumbosacral spine.  *Id.*

### b.    Medical Opinions

The ALJ reviewed the opinions of two state agency physicians, Dr. K. Sin and Dr. H. Vu.  Dr. Sin's opinion is dated August 8, 2016 (AR at 48-58), and Dr. Vu's is from September 27, 2016 (AR at 59-69).  Thus, neither physician reviewed all of the evidence in the record at the time of the hearing, including most of the medical evidence cited by the ALJ in support of her RFC determination.  *Compare* AR at 48-69 (assessments completed in 2016) *with* AR at 18-22 (citing mostly medical evidence from 2017 and 2018).  Nevertheless, the ALJ gave great weight to Dr. Vu's opinion and little weight to Dr. Sin's opinion.  AR at 22.

Dr. Vu opined plaintiff had no exertional limitations that would interfere with her ability to lift, carry, push, pull, or perform other exertional activities.  *See* AR at 22, 64.  Further, Dr. Vu opined plaintiff could perform occasional postural activities but had to avoid climbing ladders and scaffolds, extreme temperatures, noise, vibration, pulmonary irritants, and hazards due to her postural tachycardia, migraines, and risk of syncope.  *See* AR at 22, 64-66.  The ALJ concluded that Dr. Vu's opinion was consistent with the evidence, which included no imaging or other objective evidence of a spine or physical impairment.  AR at 22.

Dr. Sin's opinion was similar in some respects, except it concluded plaintiff could only work at the light exertional level.  AR at 22, 54-55.  Dr. Sin also suggested less environmental limitations than Dr. Vu.  AR at 22, 55.  The ALJ determined Dr. Sin failed to explain why plaintiff's impairments limited her to

light work, especially given that the medical evidence did not support exertional

limitations.  AR at 22.  The ALJ also concluded Dr. Sin did not sufficiently support

the finding of less environmental limitations.  *Id.*

### 3.      The ALJ Failed to Properly Consider Later Medical Evidence

The only medical opinions in this case were provided by physicians who did

not review approximately two years of medical evidence.  An ALJ may not act as

her own medical expert since she is "simply not qualified to interpret raw medical

data in functional terms."  *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *see*

*also Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (ALJ should not

make her "own exploration and assessment" as to a claimant's impairments);

*Miller v. Astrue*, 695 F. Supp. 2d 1042, 1048 (C.D. Cal. 2010) (it is improper for

the ALJ to act as the medical expert); *Padilla v. Astrue*, 541 F. Supp. 2d 1102,

1106 (C.D. Cal. 2008) (ALJ is not qualified to extrapolate functional limitations

from raw medical data).  But that is not what the ALJ did here.  Instead, she relied

on Dr. Vu's opinion.  That Dr. Vu rendered his opinion before all the medical

evidence ultimately in the record existed is not unusual.  *See Owen v. Saul*, 808

Fed. App'x 421, 423 (9th Cir. 2020) (no error in giving weight to opinions of state

agency physicians who did not review later evidence; "there is always some time

lapse between a consultant's report and the ALJ hearing and decision").

Nonetheless, in this case there appear to have been significant changes in

plaintiff's condition after Dr. Vu's review of the medical records that existed in

September 2016.  Whether those changes were enough to warrant a change in

plaintiff's RFC may be disputed, but at a minimum those changes made the ALJ's

reliance on Dr. Vu's opinion in the absence of any later opinion questionable.  The

absence of a complete medical opinion is not necessarily fatal, but the RFC

determination still must be supported by substantial evidence.  *See Tackett v. Apfel*,

180 F.3d 1094, 1102-03 (9th Cir. 1999) (ALJ must provide evidentiary support for

1   his interpretation of medical evidence).  That is not the case here.

2          To begin, the medical record shows, and the ALJ seemed to agree, that

3   plaintiff's GAD diagnosis may be to blame for many of plaintiff's symptoms,

4   including her episodes of near-syncope and syncope.  *See, e.g.*, AR at 20, 785-87,

5   843.  Yet there is no medical opinion in the record concerning that diagnosis.  *See*

6   *Afanador v. Barnhart*, 2002 WL 31497570, at *4 (N.D. Cal. Nov. 6, 2002) (ALJ

7   failed to develop the record when she did not obtain a medical opinion concerning

8   claimant's specific diagnosis).

9          Moreover, neither of the state agency physicians had an opportunity to

10  review all of the medical evidence concerning plaintiff's severe left leg

11  impairment.  *See* AR at 17.  Although that condition appeared to be mild in 2016

12  and 2017 (*see* AR at 550, 639), by 2018 plaintiff was experiencing multiple

13  instances of buckling and began to use a cane (*see* AR at 1625, 1680).  *See*

14  *Garrison*, 759 F.3d at 1017 (error for ALJ to focus on few isolated instances of

15  mild impairment given that cycles of improvement and debilitating symptoms are

16  common).  The medical evidence also showed progression in plaintiff's migraines

17  and syncope episodes in 2017 and 2018.

18         Defendant is correct that ALJs do not have to discuss each piece of evidence

19  considered.  *See Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003).  But

20  they do have to discuss significant and probative evidence.  *See id*; *Vincent v.*

21  *Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).  The ALJ failed to discuss

22  seemingly significant and probative objective medical evidence here.  For example,

23  plaintiff notes one of her treating physicians opined that an MRI of her brain would

24  not be helpful since POTS typically has no structural abnormalities.  P. Mem. at 6

25  (citing AR at 294).  Although the ALJ did not address this evidence, it may help

26  explain why, as the ALJ noted, plaintiff's head CT scan was normal.  The ALJ also

27  failed to consider potentially probative evidence showing plaintiff was having

28

15

1   trouble finding an effective medicine to treat her migraines. AR at 1534 (treatment

2   with Toradol injection), 1656 (treatment with Solumedrol and Prednisone);

3   *Trevizo*, 871 F.3d at 679 (error to dismiss impairment as not severe where medical

4   record showed failure to respond to aggressive treatments).

5          In short, in assessing plaintiff's RFC, the ALJ failed to adequately consider

6   some of the later medical evidence and further develop the record as needed.  In

7   addition, the court already found the ALJ erred in discounting plaintiff's testimony.

8   Consequently, the ALJ must reassess plaintiff's RFC on remand.

9                                            **V.**

10                          **REMAND IS APPROPRIATE**

11          The decision whether to remand for further proceedings or reverse and

12   award benefits is within the discretion of the district court.  *McAllister v. Sullivan*,

13   888 F.2d 599, 603 (9th Cir. 1989).  It is appropriate for the court to exercise this

14   discretion to direct an immediate award of benefits where: "(1) the record has been

15   fully developed and further administrative proceedings would serve no useful

16   purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting

17   evidence, whether claimant testimony or medical opinions; and (3) if the

18   improperly discredited evidence were credited as true, the ALJ would be required

19   to find the claimant disabled on remand."  *Garrison*, 759 F.3d at 1020 (setting

20   forth three-part credit-as-true standard for remanding with instructions to calculate

21   and award benefits).  But where there are outstanding issues that must be resolved

22   before a determination can be made, or it is not clear from the record that the ALJ

23   would be required to find a plaintiff disabled if all the evidence were properly

24   evaluated, remand for further proceedings is appropriate.  *See Benecke v. Barnhart*,

25   379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80

26   (9th Cir. 2000).  In addition, the court must "remand for further proceedings when,

27   even though all conditions of the credit-as-true rule are satisfied, an evaluation of

28

16

1   the record as a whole creates serious doubt that a claimant is, in fact, disabled."

2   *Garrison*, 759 F.3d at 1021.

3         Here, remand is required to fully develop the record.  On remand, the ALJ

4   shall reconsider plaintiff's testimony and either accept it or provide specific, clear,

5   and convincing reasons supported by substantial evidence for rejecting it.  The ALJ

6   shall also reconsider all the medical evidence of record, and if necessary shall

7   further develop the record by retaining a consultative examiner or medical expert.

8   The ALJ shall then proceed through steps two, three, four, and, if necessary, five to

9   determine what work, if any, plaintiff was capable of performing.

10                                **VI.**

11                          **CONCLUSION**

12        IT IS THEREFORE ORDERED that Judgment shall be entered

13   REVERSING the decision of the Commissioner denying benefits, and

14   REMANDING the matter to the Commissioner for further administrative action

15   consistent with this decision.

16

17   DATED: March 31, 2021

18

19                                _____

20                                SHERI PYM
                                  United States Magistrate Judge

21

22

23

24

25

26

27

28

                                    17